Fee Due

1  Andrew Klimkowski
   Address: 28842 Via Buena Vista
2  San Juan Capistrano, CA 92675
   Phone: (949) 689-5714
3  Email: klimkowski.andrew@gmail.com

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

JAN 23 2024

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| ANDREW KLIMKOWSKI, | Case No. 8 24-cv-00163-DOC-(JDEx) |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| vs. | |
| U.S. DEPARTMENT OF EDUCATION; MIGUEL CARDONA in his official capacity as Secretary of the Department of Education; AND DOES 1-50, INCLUSIVE, | |
| Defendants. | |

Plaintiff Andrew Klimkowski ("Plaintiff") brings this action for declaratory and injunctive relief against Defendant U.S. Department of Education ("DOE") and Defendant Miguel Cardona ("Secretary Cardona") for violating the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 533, 706; the Procedural Due Process Clause of the Fifth Amendment of the U.S. Constitution; and Unconscionable Contract under California State Law. Plaintiff alleges on information and belief:

## INTRODUCTION

1. <u>**DOE has recently admitted to the wrongdoing that Plaintiff is asserting in this Complaint**</u>: On July 12, 2022, DOE acknowledged that it had been capitalizing interest when it was **not** required by statute. Notice of Proposed Rulemaking (NPRM) (Document ID: ED-2021-OPE-0077-1350): "**We propose to amend the Direct Loan regulations to eliminate**

1    **interest capitalization in instances where it is <u>not required by statute</u>**." Regulations.Gov,

2    https://www.regulations.gov/document/ED-2021-OPE-0077-1350 (emphasis added).

3    2.       **DOE's own data shows that approximately 60% of borrowers miss recertification**. D.

4    Herbst, "Liquidity and Insurance in Student-Loan Contracts: The Effects of Income-Driven

5    Repayment on Borrower Outcomes" (2020), https://drive.google.com/file/d/1A-

6    gq_LIqffY6r2gDTcUK9-Y3ZV8Go6SU/view. **HOW CAN DOE STAND BY A SYSTEM**

7    **THAT FAILS OVER HALF OF BORROWERS?**

8    3.       In 2017 Plaintiff was enrolled in an income-based repayment plan ("IBR plan") for his

9    federal student loans. A borrower qualifies for an IBR plan when they are experiencing a partial

10   financial hardship ("PFH"). Once per year, a borrower is required to submit an IBR application

11   ("recertification") that grants DOE access to a borrower's Internal Revenue Service records/tax

12   filings, which disclose a borrower's annualized gross income ("AGI"), thereby enabling DOE to

13   determine if a borrower is still experiencing a PFH and therefore still qualifies for an IBR plan.

14   4.       If the annual recertification deadline and the 10-day grace period are missed by a borrower,

15   DOE capitalizes (adds) unpaid interest onto the borrower's principal <u>even though—as detailed</u>

16   <u>below—this policy is contrary to DOE's enabling statute and contrary to DOE's *own* Regulations.</u>

17   5.       Moreover, recertification is completely unnecessary. There is a very simple and efficient

18   alternative: Plaintiff and all borrowers could easily provide FedLoan a **one-time, multi-year**

19   **consent** to access IRS records until loans are paid off or discharged. DOE's annual recertification

20   is an arbitrary, byzantine, paperwork-submission **Scheme** that is completely unnecessary.

21   6.       DOE inexplicably discontinued the multi-year consent around 2012 for reasons completely

22   unknown and not addressed in DOE's rulemaking. One can't help but conclude that DOE

23   discontinued multi-year consent to further its **Scheme** to capitalize interest on borrowers and make

24   more money.

25   7.       **DOE's Capitalization Scheme**: <u>Annual recertification in lieu of a multi-year consent is a</u>

26   <u>scheme designed for borrowers to fail, because when recertification is accidentally missed—60%</u>

27   <u>of borrowers miss—DOE capitalizes unpaid interest even though it is contrary to its enabling</u>

28   <u>statute and its *own* Regulations.</u>

8.      On April 27, 2017, Plaintiff accidentally missed recertification when he forgot to submit an IBR application for his student loans. In Plaintiff's 14 years of repayment, 2017 was the the only recertification he ever missed.

9.      Plaintiff only learned of the missed recertification when FedLoan Servicing ("FedLoan") withdrew $1,887.61 from his bank account on June 21, 2017. At the time, FedLoan was contracted by DOE to be Plaintiff's student loan servicer. For the purpose of this complaint, FedLoan and DOE can be used interchangeably.

10.     As result of missing a completely unnecessary paperwork-submission deadline, one time, FedLoan **capitalized $58,153.33** in interest onto the principal of Plaintiff's student loans—**thus ballooning the principal balance from $163,640.33 to $221,793.66**—at 7.63% interest that results in an **additional $4,437.09** in interest each year.

11.     Plaintiff's actual interest rate is 7.88% (which is arguably usury), but DOE provides borrowers a 0.25% discount if a borrower grants them access to their bank account, which Plaintiff did. In fact, DOE has had unfettered access to Plaintiff's personal bank account since he began repayment approximately 14 years ago.

12.     **As stated above, DOE has admitted what Plaintiff is attempting to prove in this Complaint**: On July 12, 2022, DOE acknowledged that it had been capitalizing interest when it was **not** required by statute. Notice of Proposed Rulemaking (NPRM) (Document ID: ED-2021-OPE-0077-1350): **"We propose to amend the Direct Loan regulations to eliminate interest capitalization in instances where it is not required by statute."** Regulations.Gov, https://www.regulations.gov/document/ED-2021-OPE-0077-1350 (emphasis added).

13.     In 2023, Plaintiff qualified for the SAVE Plan (Saving on a Valuable Education). DOE did **NOT** capitalize interest when Plaintiff was enrolled into this plan from his REPAYE Plan (Revised Pay As You Earn Plan). **DOE is finally acting in accordance with its enabling statute and its own regulations**. Accordingly, DOE should correct prior illegal capitalizations and reverse the capitalization Plaintiff and other borrowers suffered when recertification was missed and when Plaintiff and other borrowers changed from one plan based upon a PFH to another plan based upon a PFH.

14.     With a multi-year consent in place, borrowers wouldn't have to submit new paperwork every single year, and loan services wouldn't have to process new paperwork every year. It's a win-win for everyone.

15.     **Of course, Plaintiff would gladly grant a multi-year consent considering Plaintiff has allowed DOE unfettered access to his bank account for the past 14 years.** It's quite telling how DOE doesn't require annual recertification to access to a borrower's bank account. DOE is completely fine with always being able to withdraw money from Plaintiff's account. So why wouldn't DOE want to make it easier for themselves to check Plaintiff's annual AGI? DOE did away with multi-year consent, because DOE wants to do more work? Surely not. DOE did it, so borrowers fall into the same trap Plaintiff did, which increases their bottom line.

16.     **Please recall, DOE's own data shows that approximately 60% of borrowers miss recertification**. D. Herbst, "Liquidity and Insurance in Student-Loan Contracts: The Effects of Income-Driven Repayment on Borrower Outcomes" (2020), https://drive.google.com/file/d/1A-gq_LIqffY6r2gDTcUK9-Y3ZV8Go6SU/view. **HOW CAN DOE STAND BY A SYSTEM THAT FAILS OVER HALF OF BORROWERS?**

17.     In 2012, a "commenter stated that until recently, an IRS consent process allowed ICR and IBR borrowers to provide a **multi-year consent** to allow the Department to check their [borrowers'] income, effectively preventing them from missing the annual income documentation deadline date." 77 Fed. Reg. 66105 (Nov. 1, 2012) (emphasis added). DOE did not even address this comment in their rulemaking! DOE stated: "Finally, the commenter's recommendations would present significant operational challenges for loan holders, and servicers, including the Department." *Id.* However, this was not in response to the multi-year consent comment. DOE was responding to the commenter's suggestion to limit capitalized interest to only the past year (which makes much more sense), because DOE goes on to say that "the systems of most loan holders and servicers are currently designed to automatically capitalize all unpaid interest . . . ." *Id.* at 66105-66106. What a pathetic excuse. How hard would it be to change the system? Surely, it's not an insurmountable task to adjust the amount of interest capitalized, especially when equity calls for it.

18.     The penalty for missing recertification is extreme and disproportionate. DOE capitalizes

1    ALL interest even for the years when borrowers met the recertification deadline. Accordingly, it's

2    an extremely disproportionate and unduly harsh penalty that has been brought to DOE's attention

3    by several consumer advocacy groups over the years. In response, DOE said it's not a "penalty"—

4    it's a "result"—such cruel semantics. 77 Fed. Reg. 66105 (Nov. 1, 2012).

5    19.    If FedLoan had withdrawn the $1,887.61 the day after Plaintiff's deadline, then he would

6    have likely noticed and been able to complete his recertification within the 10-day grace period per

7    34 CFR § 685.221 (e)(7) and (8), and interest would not have capitalized. Instead, FedLoan

8    inexplicably waited approximately 56 days before withdrawing the money, thus all but ensuring

9    Plaintiff would miss the grace period.

10   20.    DOE states that notifications per CFR § 685.221(e) and the 10-day grace period are

11   sufficient safeguards to help borrowers avoid any adverse consequences of missing recertification.

12   77 Fed. Reg. 66102 (Nov. 1, 2012). However, as stated above, DOE's own data shows that

13   **approximately 60% of borrowers miss recertification**. Clearly the system is broken. When

14   recertification is missed, FedLoan doesn't even call, mail, or email the borrower to notify them, so

15   what benefit is the 10-day grace period. Why doesn't a servicer contact an emergency contact of

16   the borrower, send certified mail, call, email again, or send a letter when recertification is missed?

17   FedLoan is clearly not interested in making recertification easy. **Again, all of this is completely**

18   **unnecessary if DOE just maintained multi-year consent**.

19   21.    One example of how the DOE does not make things clear, simple, easy, and logical for

20   borrowers was their inexplicable refusal to include a borrower's annual recertification date in the

21   initial notification required under §§ 682.25(e)(2), 685.209(a)5)(ii), and 685.221(e)(2) as suggested

22   to them. 77 Fed. Reg. 66102 (Nov. 1, 2012). DOE stated that the notification "would not be

23   effective or helpful to most borrowers, as this notification is sent many months in advance of the

24   annual deadline date." *Id.* Who doesn't like to plan ahead? Since when is more information not

25   better? What data is DOE relying upon in making this determination? Why would DOE want a

26   borrower to engage in high-stakes guesswork? Taxes are due every April and every American

27   knows that. DOE wants borrowers to hit a selectively disclosed deadline that is different for all

28   borrowers and seemingly designed to be missed. **Again, all of this is completely unnecessary if**

1  **DOE just maintained multi-year consent**.

2  22.     DOE provided no meaningful notice of Plaintiff's approaching and ultimately missed

3  recertification deadline. FedLoan said they mailed a letter reminding him of his deadline. He has no

4  record of receiving it. They said they sent an email. He has no record of it. They have not sent

5  proof of the email in their sent folder. He asked why they couldn't have called, sent another letter

6  (e.g., maybe in a bright envelope, maybe certified, etc.), one or two more emails, etc. They said

7  they did not have to, so they didn't. He asked FedLoan for a Communication Log for his account

8  proving the email was sent. He has not received it. They sent a copy of the letter they said they

9  mailed, but without a tracking number or his signature upon receipt there is no guarantee they did.

10  23.     The letter DOE claims to have mailed, dated February 22, 2017 and notifying Plaintiff of

11  his upcoming deadline per 34 CFR § 685.221(e)(3) could have been lost in the mail, never sent,

12  sent to the wrong address, etc. If they want to prove written actual notice, they should send the

13  letter via certified mail. FedLoan stated that since Plaintiff opted into electronic correspondence

14  then he received notice when they emailed him; however as stated above, FedLoan did not provide

15  proof any email was sent to him in accordance with 34 CFR § 685.221(e)(3). They should send

16  emails with receipt notification if they want to achieve some semblance of actual notice and

17  service.

18  24.     Servicers should act as fiduciaries—not adversaries—and notify borrowers of payment

19  plans that may benefit them (e.g., lower monthly payments, better terms that fit their unique

20  financial position, etc.). As stated, FedLoan withdrew $1,887.61 from his bank account. Plaintiff's

21  monthly payment around this time was closer to $600.00 per month, so this withdrawal was very

22  noticeable. By DOE's illegal and flawed logic (detailed below), they think that a missed deadline

23  means a borrower has "elected" or "chosen" to enter a standard payment plan not based on their

24  income. Upon learning of the withdrawal, Plaintiff immediately called FedLoan and got back into

25  an IBR plan, but the damage had already been done—$58,153.33 was capitalized. When he called

26  FedLoan they did not notify him at that time of new and possibly better repayment options

27  available to him (e.g., Revised Pay As You Earn (REPAYE) Plan, etc.). He went back into the plan

28  he was in before, but then did additional research after being upset about the capitalization and only

1    then learned of the REPAYE plan. Since the damage had been done, he changed to the REPAYE

2    plan in July 2019, so he would have a lower monthly payment. FedLoan capitalized interest <u>again</u>

3    when he changed plans even though both plans required a showing of a PFH (personal financial

4    hardship).

5    25.    <u>Interest should not be capitalized when borrowers change payment plans from one that is</u>

6    <u>based upon a PFH to another plan based upon a PFH</u>. It's illogical to punish borrowers for availing

7    themselves of another payment plan they qualify for and clearly need help from based upon a PFH.

8    26.    DOE's Regulations ignore the reality that recertification deadlines are missed by mistake

9    and ignored their own data that shows that **approximately 60% of borrowers miss**

10    **recertification**. If a system is failing over half of borrowers, clearly something is wrong. **<u>Again, all</u>**

11    **<u>of this is completely unnecessary if they just maintained multi-year consent</u>**.

12    27.    Furthermore, How many borrowers who miss recertification later qualify for IBR? Plaintiff

13    certainly did. It stands to reason that, just like Plaintiff, borrowers are not missing recertification in

14    an attempt to hide an increase in AGI, but rather due to honest mistakes, inadequate notice from

15    DOE/servicers, etc.

16    28.    DOE may also call borrowers and ask them for info over the phone or remind them of the

17    deadline once it is missed and the start of the 10-day grace period per 73 Fed. Reg. 63251 (Oct. 23,

18    2008); 20 U.S.C. § 1098e (c). They do not do this. How many times has the DOE used other

19    documentation provided by the borrower to verify income when the borrower's AGI is not

20    available as allowed in 73 Fed. Reg. 63251 (Oct. 23, 2008); 20 U.S.C. § 1098e (c)? Likely never.

21    **<u>Again, all of this is completely unnecessary if they just maintained multi-year consent</u>**.

22    29.    Plaintiff has been in repayment since early 2010. DOE has only tallied 91 months of

23    payments as of July 2023. This is completely inaccurate. Plaintiff believes he has made

24    approximately 150 qualifying payments to date. DOE's payment data is completely inaccurate.

25    Plaintiff's loans have been serviced by Great Lakes, then FedLoan, and now MOHELA. Clearly

26    qualifying payments are being missed or lost by some or all of these servicers. **DOE wants to**

27    **punish Plaintiff for missing recertification one time by capitalizing $58,153.33 to his**

28    **principal, and yet DOE's servicers can't even accurately track the number of payments**

1   **Plaintiff has made.** This leads Plaintiff to believe that his loan balance is completely inaccurate.

2   How can Plaintiff be expected to repay a loan that he is not receiving full credit for paying down?

3   30.     Plaintiff requested payment data from Great Lakes, MOHELA, and FedLoan, and it is

4   almost completely unintelligible, payments are missing for months, Great Lakes never responded,

5   etc.

6                                    **PLAINTIFF**

7   31.     Plaintiff is an individual who resides in Orange County, California and has had federal

8   student loans dating back to 2007 and has been in repayment since 2010.

9                                    **DEFENDANTS**

10  32.     Defendant DOE is a federal agency headquartered in the District of Columbia. Its principal

11  office is located at 400 Maryland Avenue S.W., Washington, D.C. 20202.

12  33.     Defendant Miguel Cardona, in his official capacity as Secretary of the Department of

13  Education, is responsible for administering the federal student loan program. Secretary Cardona

14  maintains an office at the Department's headquarters, located at 400 Maryland Avenue S.W.,

15  Washington, D.C. 20202.

16                          **JURISDICTION AND VENUE**

17  34.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331,

18  because this action arises under federal law. The relief requested herein is authorized by the APA,

19  5 U.S.C. §§ 533, 702, 706, U.S. Const. 5th Amendment, and the Court's authority to enjoin federal

20  agencies and officers from violating federal law.

21  35.     Defendants' actions give rise to an actual case or controversy within the meaning of Article

22  III of the U.S. Constitution.

23  36.     Plaintiff has suffered actual injury, and continues to, and has standing to assert claims as set

24  forth below:

25          a.      Interest was unlawfully capitalized on Plaintiff's student loans under 20 U.S.C.

26  § 1098e(b)-(c) and DOE's Regulations, 34 CFR § 685.221;

27          b.      Increased unlawful interest continues to accrue on Plaintiff's student loans;

28          d.      DOE's discontinuance of Multi-Year Consent was unlawful;

1       e.     Capitalizing interest on borrowers who change from a payment plan based upon a

2 PFH to another based upon a PFH is unlawful;

3       f.     Capitalizing ALL interest, including from prior years when recertification was not

4 missed, on borrowers who miss recertification is unlawful;

5       g.     Capitalizing Interest on borrowers who miss recertification violates the Procedural

6 Due Process of the U.S. Constitution's 5th Amendment;

7       h.     Capitalizing interest on borrowers who miss recertification is unenforceable and

8 unlawful, because it is both procedurally and substantively unconscionable and in violation of Civil

9 Code § 1770(a)(19) and § 1670.5(a);

10       i.     Capitalizing ALL interest, including from prior years when recertification was not

11 missed, on borrowers who miss recertification is unenforceable and unlawful, because it is both

12 procedurally and substantively unconscionable and in violation of Civil Code § 1770(a)(19) and

13 § 1670.5(a);

14       j.     Capitalizing interest on borrowers who change from a payment plan based upon a

15 PFH to another based upon a PFH is unenforceable and unlawful, because it is both procedurally

16 and substantively unconscionable and in violation of Civil Code § 1770(a)(19) and § 1670.5(a);

17 and

18       k.     These injuries would be redressed by a favorable decision by this Court, which

19 would invalidate DOE's Regulations pending a public rulemaking process and order that DOE

20 promulgate regulations in accordance with the enabling statute. This could ultimately lead DOE to

21 abandon, modify, or retroactively invalidate the Regulations or the underlying policy through a

22 public rulemaking process that includes input from affected student borrowers. Also, an order

23 requiring DOE to issue a Memorandum of Understanding ("MOU") would aid in the oversight of

24 the student loan industry by servicers in the manner required by law.

25 37.     Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and

26 28 U.S.C. § 1391(e)(1), because it is Plaintiff's residence and a substantial part of the events or

27 omissions giving rise to Plaintiff's claims occurred here.

28                         **THE ADMINISTRATIVE PROCEDURE ACT**

38.    The APA allows a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" to seek judicial review of that action. 5 U.S.C. § 702. Relevant here, under the APA, a reviewing court may "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A) or "without observance of procedure required by law," id. § 706(2)(D). Also relevant here, under the APA, a reviewing court may set aside and vacate an agency action that fails to include a statement of basis and purpose. 5 U.S.C. § 533.

39.    This case is properly brought under the standards set forth in the APA. See 5 U.S.C. § 701(a).

40.    Defendants' actions constitute final agency actions and no further exhaustion of remedies is required.

41.    In the alternative, exhaustion is not required because it would be futile.

## ALLEGATIONS

### Count One – As to All Defendants

### Capitalizing Interest on IBR Borrowers Who Miss

### Recertification Is Not in Accordance with Law. APA 5 U.S.C. § 706(2)(A)

42.    Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set forth herein.

43.    Under the APA, a reviewing court may set aside and vacate agency action not in accordance with law. 5 U.S.C. § 706(2)(A).

44.    Substantive agency regulations have the force and effect of law and agency actions inconsistent with regulations may be vacated as not in accordance with law. 5 U.S.C. § 706(2)(A).

45.    For the reasons detailed below, capitalization of interest on IBR borrowers who miss an Income-Recertification Deadline is not in accordance with 20 U.S.C. § 1098e(b)-(c) **and** DOE's own Regulations 34 CFR § 685.221.

46.    To begin, the "Eligibility Determinations" section for IBR in DOE's enabling statute **does not require interest to be capitalized when a borrower misses an annual recertification**

1  **deadline**. 20 U.S.C. § 1098e(c). The section states: "The Secretary shall establish procedures for

2  annually determining the borrower's eligibility for income-based repayment, including verification

3  of a borrower's annual income . . . ." *Id.* Obviously, the best way to achieve this would be for DOE

4  to offer borrowers **multi-year consents**, which DOE unlawfully and illogically discontinued

5  around 2012.

6  47.       The statute states that for IBR borrowers, "any interest . . . shall . . . be capitalized . . . at the

7  time the borrower—(I) **ends the election** to make income-based repayment." 20 U.S.C. § 1098e

8  (b)(3)(B)(i)(I) & (ii)(I) (emphasis added).

9  48.       It defies logic for DOE to conclude that missing recertification is an "election" to end IBR.

10 For DOE to conclude that a borrower no longer suffers a PFH merely because recertification was

11 missed is completely illogical and nefarious. If anything, the opposite inference is more logical and

12 likely.

13 49.       It is well established that an **election** is something purposeful, something done by choice:

14 "the right, power, or privilege of making a choice." *Merriam Webster*, https://www.merriam-

15 webster.com/dictionary/election. Plaintiff did not elect to end IBR and enter a standard repayment

16 plan when he accidentally missed recertification. It was an honest mistake, and one that over 60%

17 of borrowers make per DOE's own data. Plaintiff still qualified for an IBR after missing

18 recertification, so clearly he was not electing to leave IBR.

19 50.       When DOE promulgated the current regulations they stated: "Under the current and

20 proposed regulations, a borrower who fails to provide the annual income information required by

21 the Secretary is **considered** to no longer have a PFH, and unpaid interest will be capitalized." 77

22 Fed. Reg. 66105 (Nov. 1, 2012). (emphasis added). Incredibly, DOE admits that missing

23 recertification results in a default conclusion, or "consideration,"; however, they offer no rationale

24 for this. It is not supported by any facts like borrowers going on the lamb and pocketing thousands

25 by never telling Congress about their updated AGI. Furthermore, it's a wholly implausible,

26 illogical, and illegal consideration (conclusion) that directly contravenes Congress's intent in the

27 enabling statute when Congress clearly stated interest should be capitalized when a borrower "**ends**

28 **the election** to make income-based repayment or no longer" 20 U.S.C. § 1098e (b)(3)(B)(i)(I) &

1   (ii)(I).

2   51.    By capitalizing interest on IBR borrowers who miss recertification, DOE has blatantly

3   ignored Congress's <u>plain meaning and intent</u> when Congress passed 20 U.S.C.

4   § 1098e(b)(3)(B)(i)(I), (ii)(I). The statute's clear intention is to <u>only</u> capitalize interest on a

5   borrower who "**ends the election** to make income-based repayment." 20 U.S.C. § 1098e

6   (b)(3)(B)(i)(I) & (ii)(I), because that borrower is presumably making more money, can now afford

7   to pay more, likely no longer has a PFH, wants to attack more of the loan balance, etc. It defies

8   logic for DOE to conclude that a borrower no longer suffers a PFH merely because recertification

9   was missed. If anything, the opposite inference is more logical and likely.

10   52.    It is a cardinal principle of statutory interpretation that the court must first look to the plain

11   meaning of the statutory text. *See Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992)

12   ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute

13   what it says there"). Statutory analysis begins with the plain meaning of a statute. *Nat. Res. Def.*

14   *Council, Inc. v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001) (citing *U.S. v. Dauray*, 215 F.3d 257,

15   260) (2d Cir. 2000). If the plain meaning of a statute is susceptible to two or more reasonable

16   meanings, *i.e.*, if it is ambiguous, then a court may resort to the canons of statutory construction.

17   *See Dauray*, 215 F.3d. at 262. There is no need to do so in the instant case. There is no ambiguity.

18   Congress's meaning is clear. So clear in fact, that DOE, the executive agency tasked with

19   administering the statute, perfectly understood the meaning of the word "election" when drafting

20   their Regulations and chose the word "choose", which is a totally appropriate and acceptable

21   synonym for "election".

22   53.    To wit, 34 CFR § 685.221(b)(4) states: "Accrued interest is capitalized at the time a

23   borrower **<u>chooses</u>** to leave the income-based repayment plan or no longer has a partial financial

24   hardship." "Choose": "to select freely and after consideration." *Merriam Webster*,

25   https://www.merriam-webster.com/dictionary/choose. Clearly, accidentally missing recertification

26   is not a *choice* to leave IBR. To infer an omission is a *choice* is illogical. It's indisputable that

27   Plaintiff did not *choose* or *elect* leave IBR, because to do so would be a disastrous financial

28   decision. The analysis can end here. There is no need to delve into the canons of statutory

1  construction. **In summary, <u>DOE's Capitalization Scheme</u> is not even in accordance within the**

2  **plain meaning of their own Regulations. That's the cruel irony of their Scheme.**

3  54.    Plaintiff repeatedly asked FedLoan to reverse the capitalization. FedLoan stated that DOE

4  Regulation 34 CFR § 685.221(e)(3)(ii) supported the capitalization of interest. He explained to

5  DOE that was not true for the reasons stated above and below.

6  55.    First, the DOE Regulations provide the Secretary wide latitude in annual recertification of

7  IBR. A borrower must provide evidence of AGI "acceptable to the secretary." 34 CFR

8  § 685.221(e)(1)(i). FedLoan could have relied upon the IBR application income in the previous

9  year to calculate his payment. In fact, in 2018 FedLoan used his 2016 income information to

10 calculate his IBR payment even though he provided them with his updated 2017 income

11 information. In short, Plaintiff was punished in 2017 for not providing information that DOE didn't

12 even need.

13 56.    Second, "[i]f the borrower's AGI is not available" the borrower can provide **<u>other</u>**

14 documentation to verify income." 34 CFR § 685.221(e)(1)(ii) (emphasis added). Perhaps they

15 could have called him to discuss it over the phone, etc. Does FedLoan ever consider "other

16 documentation"? Can they cite one example? Highly doubtful. **<u>Again, all of this is completely</u>**

17 **<u>unnecessary if they just maintained multi-year consent</u>**.

18 57.    Third, 34 CFR § 685.221(e)(3)(ii) states: "The consequences if the Secretary does not

19 receive the information within 10 days following the annual deadline specified in the notice,

20 including the borrower's new monthly payment amount as determined under paragraph (d)(1) of

21 this section, the effective date for the recalculated monthly payment amount, and the fact that

22 unpaid accrued interest will be capitalized at the end of the borrower's current annual payment

23 period in accordance with paragraph (b)(4) of this section."

24 58.    34 CFR § 685.221(d)(1) states: "If a borrower no longer has a partial financial

25 hardship . . . ." The analysis can stop here. It is undisputed that Plaintiff still suffered a PFH, so he

26 does not qualify as a borrower under paragraph (d)(1).

27 59.    34 CFR § 685.221(b)(4) states: "Accrued interest is capitalized at the time a borrower

28 **<u>chooses</u>** to leave the income-based repayment plan or no longer has a partial financial hardship."

1  (emphasis added). Plaintiff did not meet and still does not meet either criterion. Accidentally

2  missing recertification is not a *choice*. Plaintiff did not "select freely" to leave IBR.

3  60.    Moreover, DOE's own Regulations continually support the idea that leaving an IBR plan

4  has to be a conscious decision and not something done by default despite their painfully flawed

5  logic detailed above in 77 Fed. Reg. 66105 (Nov. 1, 2012). For example, 34 CFR

6  § 685.221(d)(2)(i) states "If a borrower **no longer wishes** to pay under the income-based

7  repayment plan, the borrower must pay under the standard repayment plan . . . ." (emphasis added).

8  "Wishes", "chooses", etc. There is a theme here: volition, which Plaintiff clearly did not exercise

9  when he accidentally missed recertification.

10  61.    In reviewing an agency's construction of a statute, the court must reject's DOE's

11  construction because it is so contrary to clear congressional intent and frustrates the policy that

12  Congress sought to implement. *See Chevron, U.S.A. v. Natural Res. Def. Council, Inc.*, 467 U.S.

13  837, 842-844 (1984). Please recall though, <u>DOE's Capitalization Scheme</u> is not even in accordance

14  within the plain meaning of their own Regulations. That's the cruel irony of their Scheme.

15  **Accordingly, this court must reject DOE's illogical and illegal *interpretation* of its seemingly**

16  **lawful construction of its enabling statute.**

17  62.    **<u>And finally, DOE has admitted that past capitalizations were not in accordance with</u>**

18  **<u>law</u>: On July 12, 2022, DOE acknowledged that it had been capitalizing interest when it was**

19  **<u>not</u> required by statute**. Notice of Proposed Rulemaking (NPRM) (Document ID: ED-2021-OPE-

20  0077-1350): "**We propose to amend the Direct Loan regulations to eliminate interest**

21  **capitalization in instances where it is <u>not required by statute</u>**." Regulations.Gov,

22  https://www.regulations.gov/document/ED-2021-OPE-0077-1350 (emphasis added).

23  63.    In summary, DOE's practice (possibly soon to be corrected on their own accord) of

24  capitalizing interest on IBR borrowers who miss recertification, by illegally characterizing the

25  mistake as an "election" and/or "choice," is <u>not</u> in accordance with law (20 U.S.C. § 1098e(b) -

26  (c)), and is an agency action inconsistent with DOE's own regulations (34 CFR § 685.221), and

27  therefore all capitalizations on Plaintiff and other borrowers must be reversed, set aside, and

28  vacated as not in accordance with law per APA 5 U.S.C. § 706(2)(A).

64.     Capitalizing interest on IBR borrowers who miss recertification must be reversed, set aside, and vacated under the APA as not in accordance with law.

**Count Two – As to All Defendants**

**Capitalizing Interest on IBR Borrowers Who Miss**

**Recertification Is Arbitrary and Capricious. APA 5 U.S.C. § 706(2)(A)**

65.     Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set forth herein.

66.     The APA empowers this Court to set aside agency action that is arbitrary, capricious, or contrary to law. 5 U.S.C. § 706(2)(A). It is arbitrary and capricious when an agency fails to provide a reasoned explanation for its action.

67.     If an agency changes its prior position, it must display awareness that it is changing position. An agency may not disregard applicable rules or depart from a prior policy *sub silentio*. A reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior rules or policies.

68.     As stated above, **DOE's Capitalization Scheme** is not even in accordance with their own Regulations. DOE has given no reasoned explanation for capitalizing interest on IBR borrowers who miss recertification. Once can only guess what their rationale is. Are they presuming that borrowers who miss deadlines are doing so to hide an increase in AGI? If so, where's the data to support this? DOE must articulate a rational connection between the facts found and the conclusions made. *See Latino Issues Forum v. U.S.*, 558 F.3d 936, 941 (9th Cir. 2009). When a borrower misses recertification, the presumption should be that it's an honest mistake, and a mistake is not an "election" or "choice." Accordingly, **DOE's Capitalization Scheme** is a "clear error of judgment" and not "a consideration of the relevant factors." *See Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989)

69.     Capitalization in this instance is arbitrary and capricious because DOE relied on factors that Congress has not intended it to consider [only their profit], entirely failed to consider an important aspect of the problem [60% of borrowers miss their recertification deadline], offered an explanation for its decision that runs counter to the evidence before the agency [no explanation given and

15

Klimkowski v. DOE

1 unlawfully discontinued multi-year consent], or is so implausible that it could not be ascribed to a

2 difference in view or the product of agency expertise [DOE is contradicting Congress's plain

3 meaning and intent in the enabling statute and DOE unlawfully discontinued multi-year consent].

4 *See Greater Yellowstone Coalition v. Lewis*, 628 F.3d 1143, 1148 (9th Cir. 2010).

5 70.      A court may refuse to defer to an agency's interpretation of a statute that raises serious

6 constitutional concerns. *See Diouf v. Napolitano*, 634 F.3d 1081, 1090 (9th Cir. 2011) (explaining

7 court will not defer to agency interpretation if it raises "grave constitutional doubts"); *Ma v.*

8 *Ashcroft*, 257 F.3d 1095, 1105 n.15 (9th Cir. 2001) (noting *Chevron* deference is not owed where a

9 substantial constitutional question is raised by an agency's interpretation of a statute it is authorized

10 to construe); *Williams v. Babbitt*, 115 F.3d 657, 661-62 (9th Cir. 1997). Please see *infra* Plaintiff's

11 Procedural Due Process Complaint.

12 71.      **And finally, DOE has essentially admitted that past capitalizations were arbitrary and**

13 **capricious**: On July 12, 2022, DOE acknowledged that it had been capitalizing interest when

14 **it was not required by statute**. Notice of Proposed Rulemaking (NPRM) (Document ID: ED-

15 2021-OPE-0077-1350): "**We propose to amend the Direct Loan regulations to eliminate**

16 **interest capitalization in instances where it is not required by statute**." Regulations.Gov,

17 https://www.regulations.gov/document/ED-2021-OPE-0077-1350 (emphasis added).

18 72.      In summary, DOE's practice (possibly soon to be corrected on their own accord) of

19 capitalizing interest on IBR borrowers who miss recertification, by illegally characterizing the

20 mistake as an "election" and/or "choice," is arbitrary and capricious, and all capitalizations on

21 Plaintiff and other borrowers must be reversed, set aside, and vacated.

22 73.      Capitalizing interest on IBR borrowers who miss recertification must be reversed, set aside,

23 and vacated under the APA as arbitrary and capricious.

24                        **Count Three – As to All Defendants**

25                    **Capitalizing Interest on IBR Borrowers Who Miss**

26          **Recertification Is an Abuse of Discretion Per APA 5 U.S.C. § 706(2)(A)**

27 74.      Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set

28 forth herein.

75. The APA empowers this Court to set aside agency action that is an abuse of discretion. 5 U.S.C. § 706(2)(A). An action is deemed as "committed to agency discretion by law" when the authorizing statute is "drawn in such broad terms that in a given case there is no law to apply." U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (citing the legislative history of the APA: S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)).

76. Here, the statute is not drawn in broad terms. Congress has clearly "indicated an intent to circumscribe agency . . . discretion, and has provided meaningful standards for defining the limits of that discretion." *Heckler*, 470 U.S. at 821-822. The statute's clear intention is to <u>only</u> capitalize interest on a borrower who "**ends the election** to make income-based repayment." 20 U.S.C. § 1098e (b)(3)(B)(i)(I) & (ii)(I), because that borrower is presumably making more money, can now afford to pay more, likely no longer would even qualify for a PFH, wants to attack more of the loan balance, etc.

77. It defies logic for DOE to conclude that a borrower no longer suffers a PFH merely because recertification was missed. If anything, the opposite inference is more logical and likely.

78. **And finally, DOE has essentially admitted that past capitalizations were an abuse of discretion**: On July 12, 2022, DOE acknowledged that it had been capitalizing interest when it **was <u>not</u> required by statute**. Notice of Proposed Rulemaking (NPRM) (Document ID: ED-2021-OPE-0077-1350): "**We propose to amend the Direct Loan regulations to eliminate interest capitalization in instances where it is <u>not required by statute</u>.**" Regulations.Gov, https://www.regulations.gov/document/ED-2021-OPE-0077-1350 (emphasis added).

79. In summary, DOE's practice (possibly soon to be corrected on their own accord) of capitalizing interest on IBR borrowers who miss recertification, by illegally characterizing the mistake as an "election" and/or "choice," is an abuse of discretion, and therefore all capitalizations on Plaintiff and other borrowers must be reversed, set aside, and vacated

80. Capitalizing interest on IBR borrowers who miss recertification must be reversed, set aside, and vacated under the APA as an abuse of discretion.

**Count Four – As to All Defendants**

**DOE's Discontinuance of Multi-Year Consent Is Procedurally Inadequate**

1                      **Rulemaking, 5 U.S.C. §§ 533, 706**

2  81.      Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set

3 forth herein.

4  82.      The APA requires a statement of basis and purposes for final agency action. 5 U.S.C.

5 § 553(c).

6  83.      DOE has not identified the major policy issues or rationale for requiring an annual

7 paperwork submission deadline for IBR borrowers to recertify their IBR plans in lieu of a multi-

8 year consent that would avoid paperwork for all parties.

9  84.      In 2012, a "commenter stated that until recently, an IRS consent process allowed ICR and

10 IBR borrowers to provide a **multi-year consent** to allow the Department to check their [borrowers]

11 income, effectively preventing them from missing the annual income documentation deadline

12 date." 77 Fed. Reg. 66105 (Nov. 1, 2012) (emphasis added). DOE did not even address this

13 comment in their rulemaking! DOE stated: "Finally, the commenter's recommendations would

14 present significant operational challenges for loan holders, and servicers, including the

15 Department." *Id.* However, this was <u>not</u> in response to the multi-year consent comment. DOE was

16 responding to the commenter's suggestion to limit capitalized interest to only the past year (which

17 makes much more sense), because DOE goes on to say that "the systems of most loan holders and

18 servicers are currently designed to automatically capitalize all unpaid interest . . . ." *Id.* at 66105-

19 66106. How hard would it be to change the system? Surely, it's not an insurmountable task to

20 adjust the amount of interest capitalized.

21  85.      In summary, DOE fails to state any explanation for the annual paperwork submission

22 deadline for IBR borrowers to recertify their IBR plans in lieu of a multi-year consent, so it is

23 subject to vacatur.

24  86.      The annual paperwork submission deadline for IBR borrowers to recertify their IBR plans

25 in lieu of a multi-year consent must be reversed, set aside, and vacated as procedurally inadequate

26 rulemaking for failing to include a statement of basis and purpose.

27                       **Count Five – As to All Defendants**

28  **DOE's Discontinuance of Multi-Year Consent Is Arbitrary and Capricious Rulemaking Per**

1              **APA 5 U.S.C. § 706(2)(A)**

2   87.    Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set

3   forth herein.

4   88.    The APA empowers this Court to set aside agency action that is arbitrary, capricious, or

5   contrary to law. 5 U.S.C. § 706(2)(A). It is arbitrary and capricious when an agency fails to provide

6   a reasoned explanation for its action.

7   89.    DOE's discontinuance of multi-year consent is arbitrary and capricious because DOE relied

8   on factors that Congress has not intended it to consider [only their profit], entirely failed to

9   consider an important aspect of the problem [60% of borrowers miss their recertification deadline],

10  offered an explanation for its decision that runs counter to the evidence before the agency [no

11  explanation given and did not address commenters in its rulemaking], or is so implausible that it

12  could not be ascribed to a difference in view or the product of agency expertise [Why would DOE

13  want to make more work for itself and borrowers?]. *See Greater Yellowstone Coalition v. Lewis*,

14  628 F.3d 1143, 1148 (9th Cir. 2010).

15  90.    Accordingly, DOE's discontinuance of multi-year consent is a "clear error of judgment"

16  and not "a consideration of the relevant factors." *See Marsh v. Oregon Natural Res. Council*, 490

17  U.S. 360, 378 (1989)

18  91.    If an agency changes its prior position, it must display awareness that it is changing

19  position. An agency may not disregard applicable rules or depart from a prior policy *sub silentio*. A

20  reasoned explanation is needed for disregarding facts and circumstances that underlay or were

21  engendered by the prior rules or policies.

22  92.    DOE has given no reasoned explanation for discontinuing multi-year consent and instead

23  opting for an archaic, unnecessary, annual paperwork-submission deadline that they want

24  borrowers to miss so they can capitalize interest.

25  93.    DOE's discontinuance of multi-year consent and instead opting for an annual paperwork-

26  submission deadline for IBR borrowers to recertify their IBR plans must be reversed, set aside, and

27  vacated as arbitrary and capricious.

28              **Count Six – As to All Defendants**

**Capitalizing Interest on Borrowers Who Change from a PFH Plan to Another PFH**

**Plan Is Procedurally Inadequate Rulemaking, 5 U.S.C. §§ 533, 706**

94.    Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set forth herein.

95.    The APA requires a statement of basis and purposes for final agency action. 5 U.S.C. § 553(c).

96.    DOE has not identified the major policy issues for capitalizing interest on borrowers who change from one plan based upon a PFH to another plan based upon a PFH.

97.    Please recall that when FedLoan withdrew $1,887.61 from Plaintiff's bank account he called them and got back into his previous IBR Plan, but the damage had already been done (interest capitalized). When he called FedLoan they did not advise him at that time of new and possibly better repayment options available to him (e.g., REPAYE Plan, etc.). He did additional research after being very upset about the capitalization and learned of the REPAYE plan. Since the damage had been done already, he changed to the REPAYE plan in July 2019, so he would have a lower monthly payment and possibly more interest forgiven at the end of the loan. FedLoan capitalized interest again when he changed plans. **Interest should not be capitalized when borrowers change payment plans that are both based upon a PFH.** Why should borrowers be punished for availing themselves of another payment plan they qualify for and clearly need the help from?

98.    In 2023, Plaintiff qualified for the SAVE Plan (Saving on a Valuable Education). DOE did not capitalize interest when Plaintiff was enrolled into this plan from his REPAYE Plan (Revised Pay As You Earn Plan). **DOE is finally acting in accordance with its enabling statute and its own regulations**. Accordingly, DOE should correct prior illegal capitalizations and reverse the capitalization Plaintiff and other borrowers suffered when recertification was missed and when Plaintiff and other borrowers changed from one plan based upon a PFH to another plan based upon a PFH.

99.    In summary, DOE fails to state any explanation for capitalizing interest on borrowers who change from one PFH Plan to another PFH Plan, so it is subject to vacatur.

100.    Capitalizing interest on borrowers who change from a payment plan based upon a PFH to another plan based upon a PFH must be reversed, set aside, and vacated for failing to include a statement of basis and purpose.

**Count Seven – As to All Defendants**

**Capitalizing Interest on Borrowers Who from a PFH Plan to Another PFH Plan Is Arbitrary and Capricious Per APA 5 U.S.C. § 706(2)(A)**

101.    Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set forth herein.

102.    The APA empowers this Court to set aside agency action that is arbitrary, capricious, or contrary to law. 5 U.S.C. § 706(2)(A). It is arbitrary and capricious when an agency fails to provide a reasoned explanation for its action.

103.    DOE has given no reasoned explanation for capitalizing interest on borrowers who change from one PFH Plan to another PFH Plan.

104.    Congress's clear intention is to <u>only</u> capitalize interest on a borrower who "**ends the election** to make income-based repayment." 20 U.S.C. § 1098e (b)(3)(B)(i)(I) & (ii)(I), because that borrower is presumably making more money (i.e., no longer suffering a PFH) and can now afford to pay more, etc. It makes no sense and frustrates Congress's intent to punish a borrower who changes from a payment plan based upon a PFH to another plan based upon a PFH.

105.    Capitalizing interest on borrowers who change from a payment plan based upon a PFH to another plan based upon a PFH must be reversed, set aside, and vacated as arbitrary and capricious.

**Count Eight– As to All Defendants**

**Capitalizing Interest on IBR Borrowers Who Change from a PFH Plan to Another PFH Plan Is Not in Accordance with Law. APA 5 U.S.C. § 706(2)(A)**

106.    Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set forth herein.

107.    Under the APA, a reviewing court may set aside and vacate agency action not in accordance with law. 5 U.S.C. § 706(2)(A).

108.    Substantive agency regulations have the force and effect of law and agency actions

Case No.  ****
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Klimkowski v. DOE

1  inconsistent with regulations may be vacated as not in accordance with law. 5 U.S.C. § 706(2)(A).

2  109.    Congress's clear intention is to <u>only</u> capitalize interest on a borrower who "**ends the**

3  **election** to make income-based repayment." 20 U.S.C. § 1098e (b)(3)(B)(i)(I) & (ii)(I), because

4  that borrower is presumably making more money (i.e., no longer suffering a PFH) and can now

5  afford to pay more, etc. It makes no sense and frustrates Congress's intent to punish a borrower

6  who changes from a payment plan based upon a PFH to another plan based upon a PFH.

7  110.    Capitalizing interest on borrowers who change from a payment plan based upon a PFH to

8  another plan based upon a PFH must be reversed, set aside, and vacated under the APA as not in

9  accordance with law.

10                        **Count Nine – As to All Defendants**

11     **Capitalizing Interest on IBR Borrowers Who Change from a PFH Plan to Another**

12         **PFH Plan Is an Abuse of Discretion Per APA 5 U.S.C. § 706(2)(A)**

13  111.    Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set

14  forth herein.

15  112.    The APA empowers this Court to set aside agency action that is an abuse of discretion. 5

16  U.S.C. § 706(2)(A). An action is deemed as "committed to agency discretion by law" when the

17  authorizing statute is "drawn in such broad terms that in a given case there is no law to apply."

18  U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (citing the legislative history of

19  the APA: S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)).

20  113.    Here, the statute is not drawn in such broad terms. The statute's clear intention is to <u>only</u>

21  capitalize interest on a borrower who "**ends the election** to make income-based repayment." 20

22  U.S.C. § 1098e (b)(3)(B)(i)(I) & (ii)(I), because that borrower is presumably making more money

23  (i.e., no longer suffering a PFH) and can now afford to pay more.

24  114.    Here, Congress has clearly "indicated an intent to circumscribe agency . . . discretion, and

25  has provided meaningful standards for defining the limits of that discretion." *Heckler*, 470 U.S. at

26  821-822.

27  115.    Capitalizing interest on borrowers who change from a payment plan based upon a PFH to

28  another plan based upon a PFH must be reversed, set aside, and vacated under the APA as an abuse

1  of discretion.

2  **Count Ten – As to All Defendants**

3  **Capitalizing ALL Interest on Borrowers Who Miss Recertification Is Procedurally**

4  **Inadequate Rulemaking, 5 U.S.C. §§ 533, 706**

5  116.    Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set

6  forth herein.

7  117.    The APA requires a statement of basis and purposes for final agency action. 5 U.S.C.

8  § 553(c).

9  118.    DOE has not identified the major policy issues for capitalizing <u>ALL</u> interest on borrowers

10  who miss recertification one time despite recertifying on time in prior years.

11  119.    In 2012, a "commenter stated that until recently, an IRS consent process allowed ICR and

12  IBR borrowers to provide a **multi-year consent** to allow the Department to check their [borrowers]

13  income, effectively preventing them from missing the annual income documentation deadline

14  date." 77 Fed. Reg. 66105 (Nov. 1, 2012) (emphasis added). DOE did not even address this

15  comment in their rulemaking! DOE stated: "Finally, the commenter's recommendations would

16  present significant operational challenges for loan holders, and servicers, including the

17  Department." *Id.* However, this was <u>not</u> in response to the multi-year consent comment. DOE was

18  responding to the commenter's suggestion to limit capitalized interest to only the past year (which

19  makes much more sense), because DOE goes on to say that "the systems of most loan holders and

20  servicers are currently designed to automatically capitalize all unpaid interest . . . ." *Id.* at 66105-

21  66106. What a pathetic excuse. How hard would it be to change the system? Surely, it's not an

22  insurmountable task to adjust the amount of interest capitalized, especially when equity calls for it.

23  DOE suggests it would be an administrative burden or a technical difficulty. This is completely

24  unacceptable and not satisfactory.

25  120.    The penalty for missing recertification is extreme and disproportionate. DOE capitalizes

26  ALL interest even for the years when borrowers met the recertification deadline. Accordingly, it's

27  an extremely disproportionate and unduly harsh penalty that has been brought to DOE's attention

28  by several consumer advocacy groups over the years. In response, DOE said it's not a "penalty"—

1   it's a "result"—such cruel semantics. 77 Fed. Reg. 66105 (Nov. 1, 2012).

2   121.   In summary, DOE fails to provide a satisfactory explanation for capitalizing ALL interest

3   on borrowers who miss recertification one time despite recertifying on time in prior years, so it is

4   subject to vacatur.

5   122.   Capitalizing ALL interest on borrowers who miss recertification one time despite

6   recertifying on time in prior years must be reversed, set aside, and vacated for failing to include a

7   statement of basis and purpose.

8                        **Count Eleven – As to All Defendants**

9        **Capitalizing ALL Interest on Borrowers Who Miss Recertification Is Arbitrary and**

10                      **Capricious Per APA 5 U.S.C. § 706(2)(A)**

11  123.   Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set

12  forth herein.

13  124.   The APA empowers this Court to set aside agency action that is arbitrary, capricious, or

14  contrary to law. 5 U.S.C. § 706(2)(A). It is arbitrary and capricious when an agency fails to provide

15  a reasoned explanation for its action.

16  125.   DOE has given no reasoned explanation for capitalizing ALL interest on borrowers who

17  miss recertification one time despite recertifying on time in prior years. DOE suggests it would be

18  an administrative burden or a technical difficulty. This is completely unacceptable, trivial reason

19  not supported by any hard facts.

20  126.   Capitalization of ALL interest on borrowers who miss recertification one time despite

21  recertifying on time in prior years must be reversed, set aside, and vacated as arbitrary and

22  capricious.

23                        **Count Twelve – As to All Defendants**

24                      **Capitalizing Interest on IBR Borrowers Who Miss**

25  **Recertification Violates the Procedural Due Process Clause of the Fifth Amendment of the**

26                               **U.S. Constitution**

27  127.   Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set

28  forth herein.

Case No.  ****
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Klimkowski v. DOE

128.    The Fifth Amendment says to the federal government that no one shall be "deprived of life, liberty or property without due process of law." These words have as their central promise an assurance that all levels of American government must operate within the law ("legality") and provide fair procedures.

129.    "The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348-349 (1976) (citing *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 168, 171-172 (Frankfurter, J., concurring).

130.    The U.S. Supreme Court in *Mathews* attempted to define how judges should ask about constitutionally required procedures. The Court said three factors had to be analyzed: First, the private interest that will be affected by the official action; Second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and Third, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

131.    Before beginning the *Mathews* analysis, it's important to remember none of this is necessary if DOE simply never eliminated multi-year consent.

132.    First, as result of missing a needless paperwork-submission deadline, one time, FedLoan **capitalized $58,153.33** in interest onto the principal of Plaintiff's student loans—**ballooning the principal balance from $163,640.33 to $221,793.66**—at 7.63% interest that results in an additional $4,437.09 in interest each year. This is a significant amount of money, and it is happening to approximately 60% of borrowers per DOE's own data. Few things could be more critical or of a greater private interest than thousands of dollars to thousands of borrowers who have documented a PFH?

133.    Second, the capitalizing of interest is an erroneous deprivation and illogical default conclusion as demonstrated by the fact that Plaintiff still qualified for his IBR plan even after he was punished by capitalization. The probable value of additional or substitute procedural safeguards such as ensuring constructive notice of the upcoming deadline via multiple emails with

1   read receipts, brightly colored envelopes, and one or two simple phone calls would be very high,

2   considering Plaintiff is probably like the 60% of borrowers who miss the deadline in the first place

3   due to lack of actual notice. Plaintiff did not intentionally miss the deadline to hide an increase in

4   AGI. Therefore, it is very probably there will be a concrete improvement in borrowers meeting the

5   deadline if DOE adds additional procedural requirements to help increase the likelihood borrowers

6   are actually notified of the deadline. Moreover, additional procedural requirements are not

7   complicated.

8   134.    The *Mathews* Court attached importance to the government's claims for efficiency. DOE is

9   completely precluded from arguing efficiency, because if it was really a concern, they would have

10   never eliminated multi-year consent. If DOE is going to argue that resources are limited, and they

11   cannot send multiple emails, colored envelopes, place a few phone calls, etc. then they should have

12   never eliminated multi-year consent in the first place. DOE cannot argue interest in the function

13   involved and the fiscal and administrative burden of the additional procedural requirements would

14   entail, because if any of it was truly a concern, they would have never eliminated multi-year

15   consent.

16   135.    While there is no definitive list of the "required procedures" that due process requires,

17   Judge Henry Friendly generated a list that remains highly influential, as to both content and relative

18   priority (see below). This is not a list of procedures which are required to prove due process, but

19   rather a list of the kinds of procedures that might be claimed in a "due process" argument, roughly

20   in order of their perceived importance. **Again, all of these procedures would be rendered moot if**

21   **DOE simply never eliminated multi-year consent.** Plaintiff clearly needed "Notice", which is the

22   second most important procedural requirement. DOE did not provide it to Plaintiff, and the current

23   practice of one letter and one or two emails does not constitute adequate procedural safeguards as

24   required by due process, especially considering the amount of money at risk.

25          a.   An unbiased tribunal.

26          b.   **Notice of the proposed action and the grounds asserted for it.**

27          c.   Opportunity to present reasons why the proposed action should not be taken.

28          d.   The right to present evidence, including the right to call witnesses.

    e.   The right to know opposing evidence.

    f.   The right to cross-examine adverse witnesses.

    g.   A decision based exclusively on the evidence presented.

    h.   Opportunity to be represented by counsel.

    i.   Requirement that the tribunal prepare a record of the evidence presented.

    j.   Requirement that the tribunal prepare written findings of fact and reasons for its decision.

136.    In summary, Plaintiff was denied fair procedures as required by the Constitution. Therefore, capitalization of interest on IBR borrowers who missed recertification must be reversed, set aside, and vacated as violating the Procedural Due Process Clause of the Fifth Amendment of the U.S. Constitution.

**Count Thirteen – As to All Defendants**

**Capitalizing Interest on IBR Borrowers Who Miss**

**Recertification Is Unenforceable; Capitalizing ALL Interest from Past Years When**

**Recertification Was Not Missed Is Unenforceable, and Capitalizing Interest When a**

**Borrower Changes from a PFH Plan to Another PFH Plan Is Unenforceable and**

**Unlawful, Because It Is Both Procedurally and Substantively Unconscionable and in**

**Violation of Civil Code § 1770(a)(19) and § 1670.5(a)**

137.    Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set forth herein.

138.    Unconscionability is a defense against the enforcement of a contract or portion of a contract.

139.    California Civil Code § 1770(a)(19) states that inserting an unconscionable provision in a contract is unlawful.

140.    Furthermore, in 1979, the California Legislature enacted California Civil Code § 1670.5(a), which codified the principle that a court can refuse to enforce an unconscionable provision in a contract.

141.    A contract is most likely to be found unconscionable if both unfair bargaining and unfair

1  substantive terms are shown. *Ellis v. McKinnon Broad. Co.*, 18 Cal. App. 4th 1796 (1993); Cal.

2  Civ. Code § 1670.5. Therefore, unconscionability has both a procedural and a substantive aspect.

3  142.    Under California law, unconscionability of a contract or a contract clause is determined

4  based on the law and facts at the time of the agreement. Cal. Civ. Code § 1670.5; *American*

5  *Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1391 (1996) ("The critical juncture for determining

6  whether a contract is unconscionable is the moment it is entered into by both parties not whether it

7  is unconscionable in light of subsequent events."); *Brobeck, Phleger & Harrison v. Telex Corp.*,

8  602 F.2d 866, 875 (9th Cir.1979) (applying California law, unconscionability is "determined with

9  reference to the time the contract was made and cannot be resolved by hindsight").

10  143.    A <u>procedural unconscionability</u> analysis focuses on two factors: oppression and surprise.

11  *Armendariz v. Foundation Health Psychcare Svcs., Inc.*, 24 Cal. 4th 83, 113-114 (2000) (citing *A &*

12  *M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486-487 (1982)). "Oppression" arises from

13  an inequality of bargaining power resulting in no real negotiation and an absence of meaningful

14  choice. "Surprise" involves the extent to which the supposedly agreed-upon terms of the bargain

15  are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms.

16  144.    Here, Plaintiff and all other federal student loan borrowers, were in a substantially weaker

17  bargaining position than DOE with respect to student loans at the time of agreement. Borrowers are

18  in a "take it or leave it" position, and the loans are offered on a "take it or leave it" basis. Borrowers

19  have few other meaningful choices or options if they wish to pursue higher education. If they are

20  not independently wealthy or have a connection with someone who is and agrees to finance their

21  education, deserving enough to earn a full scholarship, or creditworthy enough to obtain private

22  student loans, they have no meaningful choice but to obtain federal student loans, or perhaps forego

23  higher education altogether.

24  145.    Courts have found that an absence of meaningful choice by the disadvantaged party is often

25  used to prove unfair bargaining. Here, Plaintiff clearly had an absence of meaningful choice.

26  Plaintiff was not even aware of the missed recertification deadline penalty when he received his

27  loans. It's doubtful any borrowers knew. Even if Plaintiff had known, it is highly unlikely DOE

28  would be willing to negotiate terms for just one borrower or even a group of borrowers.

146.   It's not even clear if Plaintiff had read the contract that the unconscionability of the clause would have been apparent, because the statute and regulations state that interest will <u>only</u> be capitalized when the borrower "elects" or "chooses" to leave IBR, and DOE has even acknowledged it has capitalized interest when it was not required to by statute.

147.   A <u>substantive unconscionability</u> analysis focuses on "overly harsh" or "one-sided results." *Armendariz*, 24 Cal. 4th at 113-114 (citing *A & M Produce Co.*, 135 Cal. App. 3d at 486-487).

148.   Furthermore, unconscionability turns not only on a "one-sided" result, but also on an absence of "justification" for it.'" *Id.* If DOE's annual recertification scheme, especially in lieu of multi-year consent, is indeed fair, then it would not fail over 60% of borrowers per DOE's own data. Without reasonable justification for this lack of compliance and the need for additional work on DOE's behalf due to lack of compliance, recertification appears less as a means for determining IBR eligibility and more as a means of maximizing DOE's profits. Federal student loans were not intended for this purpose.

149.   Furthermore, the penalty for missing recertification is overly harsh and one-sided. DOE capitalizes ALL interest even for the years when borrowers met the recertification deadline. Accordingly, it's an extremely disproportionate and unduly harsh penalty that has been brought to DOE's attention by several consumer advocacy groups over the years. In response, DOE said it's not a "penalty"—it's a "result"—indeed, a very one-sided one and the definition of unconscionable. 77 Fed. Reg. 66105 (Nov. 1, 2012).

150.   In summary, capitalizing interest on IBR borrowers who miss recertification is unenforceable, capitalizing ALL interest from past years when recertification was not missed is unenforceable, and capitalizing interest when a borrower changes from a PFH plan to another PFH plan is unenforceable, because it is **both procedurally and substantively unconscionable and in violation of Civil Code § 1770(a)(19) and § 1670.5(a).**

### PRAYER FOR RELIEF

151.   WHEREFORE, Plaintiff prays that this Court:

152.   Declare that capitalizing interest on IBR borrowers who miss recertification violates the APA.

153.    Order that capitalizing interest on IBR borrowers who miss recertification is reversed, set aside, and vacated.

154.    Declare that DOE's discontinuance of multi-year consent violates the APA.

155.    Order that DOE's discontinuance of multi-year consent is reversed, set aside, and vacated, and multi-year consent must be reinstated.

156.    Declare that capitalizing interest on borrowers who change from a payment plan based upon a PFH to another plan based upon a PFH violates the APA.

157.    Order that capitalizing interest on borrowers who change from a payment plan based upon a PFH to another plan based upon a PFH is reversed, set aside, and vacated.

158.    Declare that capitalizing ALL interest on borrowers who miss recertification violates the APA.

159.    Order that capitalizing ALL interest on borrowers who miss recertification is reversed, set aside, and vacated.

160.    Declare that capitalizing interest on IBR borrowers who miss recertification violates the Procedural Due Process Clause of the Fifth Amendment of the U.S. Constitution.

161.    Order that capitalizing interest on IBR borrowers who miss recertification violates the Procedural Due Process Clause of the Fifth Amendment of the U.S. Constitution and is reversed, set aside, and vacated.

162.    Declare that capitalizing interest on IBR borrowers who miss recertification is unenforceable, capitalizing ALL interest from past years when recertification was not missed is unenforceable, and capitalizing interest when a borrower changes from a PFH plan to another PFH plan is unenforceable, because it is both procedurally and substantively unconscionable and in violation of Civil Code § 1770(a)(19) and § 1670.5(a).

163.    Order that DOE resume multi-year consent for borrowers to verify their annual income and eligibility under an IBR plan or any plan based upon a PFH.

164.    Order that DOE reimburse Plaintiff for attorney fees and case costs.

165.    Order further relief as the nature of the case may require or as may be determined by the Court.

1

## **REQUEST FOR JURY TRIAL**

2    166.    Plaintiff is requesting a jury trial per Rule 38(b) of Fed. Rules of Civ. Proc.

3

4    Dated: January 15, 2024                    ANDREW KLIMKOWSKI

5

6                                         By:   x/ Andrew Klimkowski
                                               Andrew Klimkowski
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.  ****
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Klimkowski v. DOE

Andrew Klinkoski
28842 Via
SJC, CA 92675

Processing

Ronald Reagan Federal Building & U.S. Courthouse

411 West 4th St., Room 1053

Santa Ana, CA 92701-4516

CLERK, U.S. DISTRICT COURT
RECEIVED
JAN 23 2024
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION    BY DEPUTY

SIR PROUL 92/ #3
MON 22 JAN 2024 PM

